**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

ESTATE OF EDWIN SMITH, *et al.*          *

          Plaintiffs,          *

     v.          *          Civil Action No. AW-03-3424

VALERIJA SMITH,          *

          Defendant.          *

               * * * * *

## <u>MEMORANDUM OPINION</u>

This suit involves a claim brought by Defendant/Petitioner Valerija Smith ("Petitioner"

or "Valerija Smith") against the Estate of Edwin Smith ("Edwin Smith" or "Decedent") and

Sharon Steele ("Steele") (collectively, "Respondents") to recover the proceeds of Edwin Smith's

life insurance policy.  No hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md. 2004).

For the reasons stated below, the Court will GRANT *in part* and DENY *in part*

Defendant/Petitioner's Motion for Summary Judgment and Remand, will REMAND this case to

Montgomery County Circuit Court, and will DENY Plaintiff/Respondents' Motion for Summary

Judgment.

## <u>FACTUAL & PROCEDURAL BACKGROUND</u>

Valerija and Edwin Smith were married in 1979.  The couple had one child, Philip Smith,

born in 1987.  On September 15, 1997, while married to Valerija Smith, Edwin Smith began his

employment with Science Applications International Corporation ("SAIC"), where he worked until

his death.  When Edwin Smith began his employment, he was eligible for life insurance through his

employer SAIC, administered through Metropolitan Life Insurance Company ("MetLife").  On

September 15, 1997, Edwin Smith designated Valerija Smith as the sole beneficiary and Philip

Smith as the contingent beneficiary of his MetLife policy.  Neither party disputes that the MetLife

policy was governed by the provisions of the Employment Retirement Income Security Act

("ERISA"), 29 U.S.C. §§ 1001-1461 (2005). [1]

At some point, the marriage between Valerija and Edwin Smith began to deteriorate, and the

couple executed a Separation Agreement on December 30, 1998 (the "Separation Agreement").  The

Separation Agreement provided that Edwin Smith would maintain his present life insurance policy

and designate their minor child, Philip Smith, as the beneficiary and name Valerija Smith as the

trustee.  The Separation Agreement, however, did not specifically mention the MetLife policy.  The

Separation Agreement was incorporated, but did not merge into the Judgment of Absolute Divorce

Decree, entered on June 7, 1999.  Neither the Separation Agreement nor the Judgment of Absolute

Divorce Decree referred to a Qualified Domestic Relations Order.[2]

Just one day after the execution of the Separation Agreement, on January 1, 1999, Edwin

---

[1] An employer sponsored life insurance program is clearly an ERISA plan.  The statute
defines an employee welfare plan as "any plan, fund, or program which . . . is . . . established or
maintained by an employer . . . for the purpose of providing for its participants or their
beneficiaries, through the purchase of insurance or otherwise, (A) . . . benefits in the event of . . .
death" 29 U.S.C. § 1002(1).

[2] Under ERISA, a former spouse may secure an interest in plan benefits through a
Qualified Domestic Relations Order or QDRO.  *See* 29 U.S.C. § 1056(d)(3).  ERISA defines a
"domestic relations order" as any judgment, decree, or order that "(I) relates to the provision of
child support, alimony payments, or marital property rights to a spouse, former spouse, child, or
other dependant of a participant, and (II) is made pursuant to a State domestic relations law." 29
U.S.C. § 1056(d)(3)(B)(ii).  A domestic relations order is considered "qualified" if, among other
things, it gives an alternate payee the right to "receive all or a portion of the benefits payable
with respect to a participant under a plan."  29 U.S.C. § 1056(d)(3)(B)(i)(I); *see also Hopkins v.
AT&T Global Info. Solutions Co.*, 105 F.3d 153, 155-56 (4th Cir. 1997) (detailing requirements
of a QDRO).

Smith's employer, SAIC, changed life insurance carriers, and Edwin Smith was issued a CIGNA Group TermLife Insurance Policy ("CIGNA Policy") for $268,000.  On September 1, 1999, Edwin Smith designated Philip Smith as the beneficiary of the CIGNA Policy.  The CIGNA policy also was subject to ERISA's provisions on employee welfare benefit plans.

Edwin Smith changed the beneficiary designations in May of 2001 and designated Sharon Steele, Smith's new wife, as the sole beneficiary of the CIGNA Policy, and Philip Smith as the sole contingent beneficiary.  At the time of his death, Edwin Smith did not have any other life insurance policies.

After Edwin Smith's death, Steele made a claim for the life insurance benefits, which CIGNA approved on July 29, 2003.  CIGNA then placed the proceeds in a "CIGNAssurance Account" in Steele's name.

Steele made several withdrawals from this CIGNAssurance Account in the fall of 2003.  On September 8, 2003, Steele withdrew $20,000 from the account.  On September 15, 2003, Steele withdrew $84,648.35 from the account.  The next day, Steele withdrew an additional $120,000 from the account.

Shortly after learning about CIGNA's distribution to Steele, Valerija Smith sought to enforce the Separation Agreement and initiated this action in the Circuit Court for Montgomery County, Maryland on September 29, 2003.  Alleging that Steele knew of or had reason to know about the Separation Agreement and that Edwin Smith committed a fraudulent conveyance when he changed the beneficiary of his life insurance policy, Petitioner's Complaint sought a temporary restraining order enjoining Steele from withdrawing, accessing or otherwise transferring funds in the CIGNAssurance account and requested that the court place the proceeds in a constructive trust for

distribution to satisfy the Judgment of Absolute Divorce and Agreement.  Petitioner also sought to obtain the balance of the face value of the policy by a levy or garnishment against all of Steele's assets and property.  The Circuit Court for Montgomery County granted Petitioner's request for preliminary injunctive relief on October 10, 2003, enjoining Steele from accessing the remaining funds in the CIGNAssurance account.

Steele filed a notice of removal of this action, pursuant to 28 U.S.C. §§ 1441 and 1446, on December 2, 2003.  On April 19, 2004, the Court stayed the proceedings to allow the Montgomery County Circuit Court to determine whether to issue a Qualified Domestic Relations Order.  Finding that a Qualified Domestic Relations Order could not issue because the insurer already distributed the funds at issue, the Circuit Court denied Petitioner's request for a QDRO, citing the lack of an appropriate employer recipient.  *See* Pl. Second Notice Rem., Ex. 1.  The Circuit Judge also expressed some doubt as to whether the ERISA statute continued to apply to this case, but stated that it would leave this matter to this Court to resolve.   In light of Circuit Court's decision, Steele once again filed a petition for removal on July 8, 2005.  This Court conducted a conference by telephone with parties on July 14, 2005 and, that day, issued an order to reopen this matter.  The Court's order also directed the parties to file cross-motions for summary judgment.  On August 12, 2005, both parties filed motions for summary judgment.  These motions are ripe and ready for the Court's disposition, and the Court now will rule.

## **STANDARD OF REVIEW**

Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  In a motion for summary judgment, the moving party

discharges its burden by showing an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted). To defeat a motion for summary judgment, the non-moving party must come forward and show that a genuine issue of material fact exists. *See Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

With respect to removal jurisdiction, the party seeking removal bears the burden of demonstrating that jurisdiction exists. *Sonoco Products Co. v. Physicians Health Plan, Inc.,* 338 F.3d 366, 370 (4th Cir. 2003) (quoting *Mulcahey v. Columbia Organic Chems. Co., Inc.,* 29 F.3d 148, 151 (4th Cir. 1994)); *see also Peninsula Regional Med. Center v. Mid Atlantic Med. Servs.*, *LLC*, 327 F. Supp. 2d 572, 574 (D. Md. 2004).

## DISCUSSION

In her motion for summary judgment, Petitioner argues that her Complaint only states a cause of action under state law and that ERISA's civil enforcement provision, Section 502(a), does not displace her cause of action. *See* 29 U.S.C. § 1132(a) (outlining civil causes of actions that may be brought to enforce ERISA's provisions). Accordingly, Petitioner maintains the position that this Court does not have removal jurisdiction and urges this Court to grant summary judgment in her favor and remand this action to state court. This Court may not exercise jurisdiction under the

removal statute unless it finds that this suit arises under the laws of the United States. *See* 28 U.S.C. § 1331. Therefore, to resolve the question of subject matter jurisdiction, this Court must consider whether Petitioner's Complaint that pled only state law causes of action must be construed as an action arising under federal law. *See generally Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 60 (1987).

This Court begins its analysis by considering issues of subject matter jurisdiction, including those related to the legal basis for the removal of this action. *Sonoco*, 338 F.3d at 370 (quoting *Mayes v. Rapoport*, 198 F.3d 457, 460 (4th Cir. 1999). The removal statue specifies that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Federal statute also confers federal courts with jurisdiction over suits arising under federal law. *See* 28 U.S.C. § 1331. Yet, federal courts must adhere to the ancient rule that "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *See Taylor*, 481 U.S. at 63 (internal quotations and citation omitted).

Although, in most cases, a complaint that only alleges violations of state law does not "arise under" the laws of the United States, courts have recognized an exception to this general rule where Congress intended to completely preempt an area of law so that any civil complaint raising this select group of claims becomes a creature of federal law. *See id.* at 64; *Sonoco*, 338 F.3d at 371; *Darcangelo v. Verizon Comm., Inc.*, 292 F.3d 181, 187 (4th Cir. 2002). In such cases, where federal law completely preempts a state law claim, a defendant properly may remove the suit to federal court, based on the jurisdictional doctrine referred to as "complete preemption." On the other hand,

where a state law claim conflicts with federal law, but federal law does not displace the cause of action, a defendant may assert preemption as a defense to the plaintiff's suit. *See Darcangelo*, 292 F.3d at 187. In those cases, a court will not view the claim as arising under federal law, but rather as a state law claim subject to an ordinary or "conflict preemption" defense. *See Sonoco*, 338 F.3d at 370-71. A conflict preemption defense does not "appear on the face of a well-pleaded complaint, and therefore, does not authorize removal to federal court." *Id.* at 371 (quoting *Taylor*, 481 U.S. at 63).

With this distinction in mind, this Court then must address the question of whether ERISA completely preempts Petitioner's state law claims. A statute sweeping in its scope, ERISA governs any "employee welfare benefit plan" established or maintained by an employer or employee organization "engaged in commerce or in [an] industry or activity affecting commerce." 29 U.S.C. § 1003(a). A life insurance plan may qualify as welfare benefit plan under ERISA, *see* 29 U.S.C. 1002(1), and the parties agree that the MetLife and CIGNA insurance plans constituted employee welfare benefit plans under ERISA. In addition, Section 514 of ERISA makes clear that Congress intended for ERISA to preempt any state law that either directly or impliedly conflicts with this statutory scheme and states that ERISA's provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," 29 U.S.C. § 144(a). In support of their motion for summary judgment, Respondents assert that Section 514, ERISA's preemption provision, precludes Petitioner from recovery on her state law claims. While the applicable caselaw suggests that Petitioner should not recover under state law because ERISA preempts her claims based on the doctrine of conflict preemption, conflict preemption does not provide a basis for removal jurisdiction. *Sonoco*, 338 F.3d at 371. Instead, when determining the propriety of removal,

7

the relevant inquiry is whether the state law claim fits into Section 502, ERISA's civil enforcement

provision, as "the only state law claims properly removable to federal court are those that are

'completely' preempted by . . . Section 502(a)." *Id.*; *see also Darcangelo*, 292 F.3d at 187; *cf. Aetna*

*Health Inc. v. Davila,* 542 U.S. 200, 209 (2004) ("any state-law cause of action that duplicates,

supplements, or supplants the ERISA *civil enforcement remedy* conflicts with the clear congressional

intent to make the ERISA remedy exclusive and is therefore pre-empted") (emphasis added).

Section 502(a) authorizes "a participant, beneficiary, or fiduciary" to bring a civil suit "(A)

to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan,

or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any

provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). The Fourth Circuit

has clarified that complete preemption under Section 502(a) occurs under the following conditions:

(1) the plaintiff has standing under section 502(a) to pursue its claim; (2) its claim must fall within

the scope of an ERISA provision that it can enforce via section 502(a); and (3) a court cannot

resolve the claim without an interpretation of the contract governed by federal law, i.e., an ERISA-

governed employee benefit plan. *Sonoco*, 338 F.3d at 372; *see also Butero v. Royal Maccabees Life*

*Ins. Co.,* 174 F.3d 1207, 1212 (11th Cir. 1999); *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d

1482, 1487 (7th Cir. 1996).

An analysis of the first prong, Petitioner's standing, begins with text of Section 502. Section

502(a) enumerates the parties entitled to assert claims under ERISA and specifically provides that

only "participants," "beneficiaries," and "fiduciaries" may pursue an ERISA claim under the civil

enforcement provision. 29 U.S.C. § 1132(a)(3); *see also Sonoco*, 338 F.3d at 372 (stating, "the only

parties entitled to pursue an ERISA claim under § 502(a)(3) are 'participants,' 'beneficiaries,' and

'fiduciaries'").  The parties concede that Petitioner is not a participant or a fiduciary within the meaning of Section 502(a).  The only question, therefore, is whether Petitioner falls under the statute's definition of a "beneficiary."

The ERISA statute defines the term "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).  Unfortunately, neither the Supreme Court nor the Fourth Circuit has had an occasion to interpret the term "beneficiary" in this section of ERISA.  The Supreme Court, however, has expounded on the definition of "participant," as it is used in ERISA's civil enforcement provision, in *Firestone Tire and Rubber Company v. Bruch*, 489 U.S. 101 (1989).  In that case, Firestone had sold five of its plants to a successor company, Occidental Petroleum Company. Occidental Petroleum rehired most of the employees at the plants, including the plaintiffs.  Plaintiffs sought severance benefits under Firestone's employee termination program, a plan governed by ERISA, and information about the program.  *See id.* at 105.  Denying their request, Firestone maintained the position that the employees could not bring suit under ERISA because they were not "participants" in the ERISA plan.  In an attempt to clarify the definition of "participant," the Supreme Court opined:

> In our view, the term "participant" is naturally read to mean either "employees in, or reasonably expected to be in, currently covered employment". . . or former employees who "have . . . a reasonable expectation of returning to covered employment" or who have "a colorable claim" to vested benefits.

*Firestone Tire*, 489 U.S. at 117 (internal citations omitted).  Courts have extended the reasoning set forth in *Firestone* and have construed the term "beneficiary" to mean a person who has a colorable claim that he or she is a beneficiary or will become entitled to benefits under the terms of the ERISA

plan. *See e.g.*, *Neuma Inc. v. AMP, Inc.*, 259 F.3d 864, 878 (7th Cir. 2001); *Rovira v. AT & T*, 817 F. Supp. 1062, 1069 (S.D.N.Y. 1993); *see also Keys v. Eastman Kodak Co.*, 739 F. Supp. 135, 137-38 (W.D.N.Y. 1990) (holding that a son not designated as a "beneficiary"for deceased father's pension plan was not entitled to plan disclosures as he was not a "beneficiary" within the meaning of ERISA statute).

Respondents argue that Valerija Smith would have standing to sue as a beneficiary under ERISA's civil enforcement provision. Yet, Respondents have not directed the Court to any authority to support this proposition aside from *Firestone*. Petitioner, however, unlike the plaintiffs in *Firestone,* does not appear to have a colorable claim to Edwin Smith's vested benefits. At the time Edwin Smith died, Petitioner was not designated by Edwin Smith to receive the benefits under his life insurance policy. Furthermore, CIGNA had already paid these benefits prior to the commencement of this suit. Petitioner could not and does not allege she is entitled to benefits under the CIGNA policy, and this Court finds that Petitioner could not have maintained a suit under ERISA for recovery of these benefits. *Cf. Hopkins v. AT&T Global Info. Solutions Corp.* 105 F.3d 153 (holding that the interest in a surviving spouse's retirement benefits, governed by ERISA, vested in the surviving spouse once participant retired). Because CIGNA distributed the benefits at issue before Petitioner filed this suit and because Petitioner was not designated a "beneficiary" of the policy, this Court finds that Petitioner did not have a "colorable" ERISA claim.

In holding that Valerija Smith was not a beneficiary under the CIGNA Policy, this Court does not adopt Valerija Smith's position that ERISA does not apply to her claims. Rather, the Court relies on much narrower grounds to support this ruling. Indeed, the case of *Metropolitan Life Insurance Co. v. Pettit*, 164 F.3d 857 (4th Cir. 1998) explicitly holds that "a constructive trust claim

against a plan *beneficiary*, which arises from a domestic relations agreement, and directly affects the distribution the distribution of plan benefits . . . [is] subject to preemption." *Id.* at 862 (emphasis added). The *Pettit* court also concluded that a person attempting to make such a claim against a plan beneficiary may prevail only if the domestic relations order meets the requirements of a QDRO. *Id.* at 862-65 & n.4. Although the *Pettit* decision addressed the issue of conflict preemption, the ruling in that case could serve as a defense to Petitioner's action in state court. Nevertheless, where, as here, the Court lacks removal jurisdiction, the Court must remand the case. *See Mulcahey v. Columbia Organic Chem. Co.,* 29 F.3d 148, 151 (4th Cir. 1994) (holding that a court must remand the case if doubts exist about its removal jurisdiction); *see also Eccles v. Nat'l Semiconductor Corp.*, 10 F. Supp. 2d 514, 516 (D. Md. 1998). Therefore, this Court will grant Petitioner's Motion to Remand, as this Court lacks subject matter jurisdiction. The Court will also deny both Petitioner and Respondents' motions for summary judgment without prejudice to the rights of either party to reassert the motions at a later time.

## CONCLUSION

For the aforementioned reasons, this Court will grant Defendant/Petitioner's Motion for Summary Judgment and Remand *in part* and deny Respondents' Motion for Summary Judgment. An Order consistent with this Opinion will follow.

Date:   December 12, 2005                             /s/
                                          Alexander Williams, Jr.
                                          United States District Judge